IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MELISSA FINDELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     1:16CV1256 |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Melissa Findell ("Plaintiff") brought this action pursuant to Section 205(g) of

the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review

of a final decision of the Commissioner of Social Security denying her claim for Disability

Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions

for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on January 16, 2013, alleging a

disability onset date of May 29, 2008. (Tr. at 14, 157-64.)[2] Her claim was denied initially (Tr.

at 72-81, 93-96), and that determination was upheld on reconsideration (Tr. at 82-92, 106-13).

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #7].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 114-15.) Plaintiff attended the subsequent hearing on February 18, 2015, along with her attorney and an impartial vocational expert. (Tr. at 14.) The ALJ issued a decision on April 2, 2015, concluding that Plaintiff was not disabled within the meaning of the Act from her alleged onset date of May 29, 2008 through her date last insured on March 31, 2013. (Tr. at 27.) On August 27, 2016, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since May 29, 2008, her alleged onset date, through March 31, 2013, her date last insured. (Tr. at 16.) Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that through March 31, 2013, Plaintiff suffered from the following severe impairments: "cervical degenerative disc disease with a history of an anterior cervical discectomy and fusion at C4-C5 and C5-C5 [sic]; bilateral carpal tunnel syndrome (CTS); fibromyalgia; and right plantar fasciitis with a history of internal fixation surgery." (Tr. at 16.) The ALJ found at step three that none of these impairments,

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

either individually or in combination, met or equaled a disability listing. (Tr. at 18.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with myriad additional postural and manipulative limitations. (Tr. at 19.) Specifically, the ALJ found that through the date last insured, Plaintiff:

> had the residual functional capacity to perform unskilled light work as defined in 20 CFR 404.1567(b) except that the claimant can occasionally climb ramps and stairs, but can never climb ropes, ladders, or scaffolds. She can occasionally bend, balance, crouch, and stoop, but can never kneel or crawl. She cannot use foot pedals, or push and/or pull with her bilateral lower extremities. The claimant can frequently handle, finger, and feel with her left upper extremity and can occasionally handle, finger, and feel with her right upper extremity. She can frequently reach in all directions, including overhead reaching with the bilateral upper extremities. Lastly, the claimant requires the opportunity to alternate between sitting and standing every 2 hours at the workstation, and can stand and/or walk for a total of 4 hours in an 8-hour workday.

(Tr. at 19.) Based on this determination, the ALJ determined at step four of the analysis that Plaintiff could not perform her past relevant work. (Tr. at 25-26.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 26-27.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 27.)

Plaintiff now contends that the ALJ erred in two respects. First, she argues that the ALJ "erred by failing to identify and include in her decision a reasonable explanation for how the apparent conflict was resolved between the testimony of the vocational expert . . . and the Dictionary of Occupational Titles ("DOT") regarding the handling and fingering requirements of the jobs cited at Step 5 of the Sequential Evaluation Process." (Pl.'s Br. [Doc. #10] at 1.) Second, Plaintiff contends that the ALJ "erred when assessing the effects of pain" on

Plaintiff's RFC. (Id.) After a thorough review of the record, the Court finds that neither of these arguments merit remand.

A.    DOT Conflict

In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, "it can only provide substantial evidence if the ALJ received an explanation from the expert explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the expert's testimony rather than the DOT." Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016) (citing Pearson, 810 F.3d at 209-10).

In this case, in considering the relevant vocational issues, the ALJ first posed a hypothetical question to the Vocational Expert that included "frequent handling, fingering and feeling with the bilateral upper extremities." (Tr. at 58-59.)[5] The Vocational Expert identified three positions that would be available with the stated restrictions: an order caller (DOT 209.667-014), a router (DOT 222.587-038), and a ticket taker (DOT 344.667.010). (Tr. at 59-60.) The Vocational Expert correctly testified that this was consistent with the Dictionary of Occupational Titles. (Tr. at 60-61.) Specifically, the DOT provides that the position of order caller involves frequent handling and fingering, the position of router involves frequent handling and only occasional fingering, and the position of ticket taker

---

[5] The Court only includes the handling and fingering restrictions in this discussion because that is the basis of Plaintiff's claim.

involves frequent handling and only occasional fingering. The ALJ then posed further

hypothetical questions to the Vocational Expert, including a hypothetical question that

maintained the restriction to frequent handling, fingering, and feeling with the left upper

extremity, but included a further restriction to only occasional handling, fingering, and feeling

with the right upper extremity. (Tr. at 60-61.) This restriction is reflected in the RFC that the

ALJ ultimately adopted in this case, which concluded that Plaintiff could "frequently handle,

finger, and feel with her left upper extremity and can occasionally handle, finger, and feel with

her right upper extremity." (Tr. at 19.) The ALJ specifically asked the Vocational Expert if,

given a restriction to occasional handling, fingering, and feeling with the right hand, Plaintiff

could still perform the previously identified jobs of order caller, router, and ticket taker. (Tr.

at 61.) The expert replied as follows:

> Yes ma'am. With that added factor, those jobs would remain appropriate for
> the hypothetical person. These examples are primarily verbal type jobs or can
> be –and/or can be performed one handedly. There would be no impact on my
> testimony. It would stay as stated. I'm using professional association for [this]
> testimony.

(Tr. at 61.)

Moreover, in response to further questioning by Plaintiff's counsel, the Vocational

Expert provided further specific testimony as to each of the positions, noting again that the

identified positions are "primarily verbal and/or can be done one handed." (Tr. at 63.) The

Vocational Expert then further explained that:

> [As to the ticket taker], it can be done one handed, and – or the person has a
> receptacle to – for the customers or the patrons to place their receipts without
> having to handle the actual tickets. . . . [As to the router], [t]hese are workers
> who transmit information to other workers in a business establishment to
> communicate assignments. An example would be in a retail store. If a certain

situation needed to be addressed in a particular location of the store, the router would take the information and transmit it to whoever was responsible for going to that location and resolving the issue. So, it's a verbal transmittal of information to other workers. [As to the order caller, these are] [p]retty much the same as the material substantial occupational duties of the router. It is an information transmittal worker who provides details of orders to other workers for them to complete the orders . . . They're not keeping records or generating any kind of written receipt. . . . It could be done usually over a telephone or a microphone or some type of radio communication device.

(Tr. at 63-65.) The Vocational Expert explained that to support this testimony, he was relying

upon "professional association of 38 years of job placement, labor market surveys and job

analysis." (Tr. at 65.)

Accordingly, the ALJ noted in her decision that the Vocational Expert's

testimony regarding [t]he availability of [a] sit/stand option and handling, fingering[,] and feeling is based upon his professional experience and his exposure to seeing the work performed. Based upon the vocational expert's testimony, the undersigned finds this to be an acceptable deviation from the DOT.

(Tr. at 27.)

In short, the record clearly reflects that the ALJ identified the apparent conflict between

the expert's testimony and the DOT, elicited an explanation for that conflict (i.e., that the jobs

could be performed one-handedly or even verbally, based upon the expert's professional

exposure), explicitly determined that this explanation was reasonable, and included the

explanation in her decision at step five. Pearson requires no more.[6]

---

[6] Plaintiff also appears to challenge the expert's testimony that the jobs of order caller, router, and ticket taker could be performed with only occasional use of both hands (see Pl.'s Br. at 5) (citing Tr. at 63). However, on this point, the vocational testimony challenged by Plaintiff relates to the hypothetical restrictions posed by Plaintiff's attorney on cross-examination, not the handling restrictions ultimately included in Plaintiff's RFC. Similarly, in Plaintiff's Reply Brief, Plaintiff challenges the Vocational Expert's testimony that "the DOT does not really reference hand usage in the workplace." (Tr. at 65.) Plaintiff contends that this statement is inaccurate because the DOT does include hand usage information. However, the hand usage at issue in the present case

B.     Symptom Evaluation

Plaintiff next argues that the ALJ "erred by failing to properly account for the vocationally limiting effects of Plaintiff's hand pain and numbness in her RFC." (Pl.'s Br. at 8.)  Specifically, Plaintiff contends that, in determining that her subjective complaints of pain were not credible, the ALJ improperly (1) characterized her cervical spine surgeries as "successful" and (2) relied on Plaintiff's failure to undergo the recommended surgery for carpal tunnel surgery as evidence of "a possible unwillingness to do that which is necessary to improve her condition" or "an indication that her symptoms are not as severe as she has alleged." (Pl.'s Br. at 9) (citing Tr. at 24).  Plaintiff thus appears to challenge the credibility determination made by the ALJ in assessing Plaintiff's pain allegations under the applicable two-step framework.

Under the applicable regulatory guidance, the ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record."  SSR 96-7p; see also 20 C.F.R. § 404.1529.[7]  Toward this end, the Fourth Circuit in Craig described the

---

relates to the distinction between bilateral versus one-handed handling restrictions, and as discussed in Pearson itself, the DOT does not explicitly address or distinguish between one-handed versus bilateral functioning. Pearson, 810 F.3d at 210-11.  Moreover, under Pearson, the critical determination is the ALJ's identification and resolution of the apparent conflict, whether or not identified by the vocational expert. Pearson, 810 F.3d at 209.  Here, the ALJ identified the issue and explained her determination, finding an "acceptable deviation" from the DOT with regard to the greater handling and fingering restrictions for Plaintiff's right hand, based on the expert's testimony described above (i.e., that the jobs could be performed one-handedly or even verbally, based upon the expert's professional exposure).  This scenario is far removed from the situation in Pearson, where neither the ALJ nor the vocational expert addressed the issue of bilateral versus one-handed reaching requirements for the identified positions, or the situation in Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016), cited by Plaintiff, where the vocational expert gave conclusory testimony that there was not a conflict between his testimony and the DOT and no further analysis or explanation was made by the ALJ or the vocational expert addressing the issue. See also Pearson, 810 F.3d at 209 (noting that the court was not adopting a rule that would "allow the claimant to nitpick an ALJ's or expert's word choice on appeal").

[7] Effective March 28, 2016, see Social Security Ruling 16–3p, 2016 WL 1237954 (Mar. 24, 2016), the Social Security Administration superseded SSR 96–7p with Social Security Ruling 16–3p, 2016 WL 1119029, at *1

two-part test for evaluating a claimant's statements about symptoms.  76 F.3d at 594-95.

"First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 594 (citing 20 C.F.R. § 404.1529(b)).  If the ALJ determines that such an impairment exists, the second part of the test then requires the ALJ to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 596; see also Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) (similarly setting out the two-part test).

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Craig, 76 F.3d at 596.  This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability

---

(Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96–7p," id. at *1 n.1. The ALJ's decision in this case on April 2, 2015 predates the effective date of SSR 16–3p, and "because SSR 16–3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4–8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (unpublished) (Eagles, J.); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.)." Ivey v. Berryhill, No. 1:16CV1304, 2017 WL 4236558 at *6 n.7 (M.D.N.C. Sept. 22, 2017) (Auld, M.J.).  The Court therefore considers Plaintiff's claims under SSR 96-7p applicable at the time of the ALJ's decision.

to perform basic work activities. Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 24.) Therefore, Plaintiff's credibility challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. §§ 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis, 858 F.3d at 866. However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other objective evidence are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work" and "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also

Gowans v. Astrue, Civil No. SKG-06-2817, 2008 WL 179479, at*11 (D. Md. Jan 17, 2008) ("[E]ven though plaintiff's subjective complaints may demonstrate the requisite intensity and severity at step two, if there is significant evidence that contradicts his subjective complaints, the ALJ may, indeed must, consider that evidence in conjunction with the subjective evidence."); McLamb v. Astrue, No. 5:08-CV-305-FL, 2009 WL 2046062, at *9 (E.D.N.C. July 14, 2009); Wetmore v. Astrue, No. 5:09-CV-38, 2009 WL 6449319, at *22 (N.D. W. Va. Oct. 26, 2009).

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence contrary to Plaintiff's claims in conjunction with the subjective evidence. In fact, the ALJ devoted a full page of her decision to Plaintiff's credibility assessment, addressing each of Plaintiff's severe impairments in turn and describing the evidence she relied upon in finding those impairments less than fully disabling. The ALJ noted generally that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." (Tr. at 24.) With respect to Plaintiff's hand pain, the ALJ relied upon medical records reflecting a full range of motion and normal muscle strength in both upper extremities following Plaintiff's cervical fusion surgeries, as well as normal neurologic examinations with no focal motor weakness and no evidence of median neuropathy or proximal ulnar neuropathy. (Tr. at 22, 24-25, 253-54, 287-91, 372.)[8] Moreover, the ALJ recounted Plaintiff's

---

[8] The ALJ also noted that Plaintiff's nerve conduction study in June 2011 "showed no evidence of a more proximal median neuropathy, distal or proximal ulnar neuropathy, radial sensory neuropathy, underlying generalized peripheral neuropathy brachial plexopathy, or cervical motor root abnormality affecting either arm." (Tr. at 22, 291.)

own testimony that "she is capable of opening jars occasionally and can pick up coins from a table" and that she had not undergone the recommended carpal tunnel release surgery on her right wrist, despite her continued complaints of pain. (Tr. at 20, 24, 39-40, 47-48.) Finally, the ALJ noted the lack of atrophy in Plaintiff's upper extremities, concluding that Plaintiff's chronic pain had not altered her use of those muscles to such an extent that atrophy had resulted. (Tr. at 24, 298, 301, 304, 308, 311, 316, 318.) For these reasons, the ALJ concluded that Plaintiff's hand pain was not as functionally-limiting as she alleged.

Plaintiff now raises specific challenges to two of the factors described in the ALJ's credibility assessment. She first argues that the ALJ improperly characterized her cervical fusion surgeries as "successful" solely because her post-surgical exams failed to reveal any motor weakness, despite continuing MRI evidence of stenosis. In particular, Plaintiff contends that "the ALJ was not at liberty to reject [Plaintiff's] allegations regarding her restricted ability to use her hands on the premise that she had the motor strength to use them more frequently as her limitations are due to pain and numbness, not motor weakness, and these symptoms have been attributed to an objective cause—cervical nerve stenosis and right sided CTS." (Pl.'s Br. at 11.) As explained above, however, step two of Craig requires more than the showing of objective cause relevant at step one. An ALJ must instead consider all of the evidence, both objective and subjective, to determine "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 596.

Here, as the ALJ's decision notes, Plaintiff received no treatment for her cervical spine between October 2009 and December 2012, belying Plaintiff's contention that her October 2008 surgery was unsuccessful. As noted by the ALJ, Plaintiff's medical records from

September and October 2009 reflect that her neck pain improved following the surgery, that she had no arm pain, that she was increasing her activity, that she had made an excellent recovery, and that x-rays showed stable fusions. (Tr. at 21, 254-58.) She did not seek further treatment for her neck until over three years later, on December 20, 2012, when she returned to her neurosurgeon, Dr. Gary Cram, complaining for the first time of worsening of her neck pain with "some numbness in her left arm." (Tr. at 21-22, 253.) Although Plaintiff also complained of "some electric shocks that she is feeling down her left arm to her hand when she is leaning over," Dr. Cram noted that she was "not really having any pain going into the right arm." (Tr. at 22, 253.) On examination, she had "full range of motion of her neck" with only "a little bit of restriction pain limited wise in extreme extension." (Tr. at 253.) Dr. Cram ordered a repeat MRI of Plaintiff's cervical spine which took place in January 2013. The ALJ acknowledged that the January 2013 "MRI of [Plaintiff's] cervical spine showed some osteophyte and foraminal stenosis at C6-C7 and some central stenosis and foraminal stenosis at C3-C4." (Tr. at 24, 250.) However, the ALJ also noted that Plaintiff's "fusions at C4-C5 and C5-C6 have remained solid," "her neurological examination remained normal with no focal motor weakness," and "[she] was noted to have full range of motion of her neck and normal muscle strength in her upper extremities." (Tr. at 24, 250, 253.) Further cervical surgery was not recommended, and Dr. Cram recommended only physical therapy to address her pain. (Tr. at 22, 24, 250.) Significantly, Dr. Cram's previous treatment records reflect that Plaintiff's post-surgical symptoms of numbness and tingling in her hands and fingers were "consistent with carpal tunnel syndrome" rather than an ongoing cervical spine issue. (Tr. at 260.)

Plaintiff fails to address how this analysis of her cervical fusion surgeries resulted in a credibility determination that was "patently wrong." As discussed above, the ALJ set out at length the evidence relied upon in concluding that the cervical fusion surgeries were successful. In addition, Plaintiff makes no connection between the allegedly unsuccessful nature of her cervical surgeries and any functional limitations. Rather, she generally argues that her hand pain was so severe as to render her totally disabled. As set out above, however, a claimant's pain is "determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Here, the ALJ set forth the objective medical evidence and other evidence considered in evaluating Plaintiff's pain allegations, including the evidence of Plaintiff's successful spinal surgeries. (Tr. at 24.) Substantial evidence supports the ALJ's determinations, and the Court finds no error.

In a related argument, Plaintiff contends that the ALJ did not properly consider her reasons for failing to undergo carpal tunnel release surgery as recommended by her treating physician. At her hearing, Plaintiff testified that she declined the procedure because she felt frustrated and depressed after her previous neck and foot surgeries failed to yield the results she expected. (Tr. at 47-48.) The ALJ recounted this testimony in her decision (Tr. at 20), but nevertheless relied on Plaintiff's failure to undergo the recommended procedure as evidence of "a possible unwillingness to do that which is necessary to improve her condition" or "an indication that her symptoms are not as severe as she has alleged" (Pl.'s Br. at 9) (citing Tr. at 24).

In raising this contention, Plaintiff relies on 20 C.F.R. § 404.1530. Under that regulatory provision, a claimant "must follow treatment prescribed by [her] medical source(s) if this treatment is expected to restore [her] ability to work," and the claimant will not be considered disabled if the claimant fails to follow prescribed treatment without a good reason. 20 C.F.R. § 404.1530(a), (b). This regulatory provision goes on to include examples of acceptable reasons for not following prescribed treatment. 20 C.F.R. § 404.1530(c). Plaintiff argues that "one of the examples the regulations list as a good reason for not following prescribed treatment is that a surgery was previously performed with unsuccessful results and a surgery is now being advised for a similar impairment." (Pl.'s Br. at 11) (citing 20 C.F.R. § 404.1530). However, the regulation actually provides for such an exception only where "[s]urgery was previously performed with unsuccessful results and the *same* surgery is again being recommended for the *same* impairment." 20 C.F.R. § 404.1530(c)(3) (emphasis added). Because Plaintiff has not previously undergone carpal tunnel release surgery, this exception is inapposite.

Moreover, the ALJ did not reject Plaintiff's claim pursuant to § 404.1530, and instead considered Plaintiff's failure to follow the prescribed treatment as one of many factors in considering Plaintiff's credibility. Indeed, SSR 96-7p, in effect at the time, specifically notes that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." In this case, the ALJ recounted the reasons given by Plaintiff for refusing the surgery and nevertheless concluded in the circumstances that Plaintiff's failure to follow through with

the recommended surgery "demonstrates a possible unwillingness to do that which is necessary to improve her condition, or it may also be an indication that her symptoms are not as severe as she has alleged." (Tr. at 24.) Plaintiff has not shown how this credibility analysis was improper or how the ALJ's credibility determination was unsupported by substantial evidence. To the extent that Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, explained the reasons for her credibility determination, and supported that explanation with substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the

Commissioner [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 11th day of October, 2017.

/s/ Joi Elizabeth Peake
United States Magistrate Judge